Anthony Barnes (Bar No. 199048)
Jason Flanders ((Bar No. 238007)
AQUA TERRA AERIS LAW GROUP LLP
490 43rd Street, Suite 108,
Oakland, CA 94609
Telephone: (415) 326-3173
Email: amb@atalawgroup.com

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>COVEY AUTO EXPRESS INC., a California corporation,<br><br>Defendant. | Case No. 2:18-cv-00549-KJM-EFB<br><br>**CONSENT DECREE**<br><br>**Judge: Hon. Kimberly J. Mueller**<br><br>**Complaint Filed: March 23, 2018** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff California Sportfishing Protection Alliance, and Defendant Covey Auto Express, Inc.

**WHEREAS,** California Sportfishing Protection Alliance (hereinafter "CSPA") is a non-profit entity dedicated to protecting California surface waters from pollution and degradation, among other objectives.

**WHEREAS**, Covey Auto Express, Inc. (hereinafter "Covey"), a Corporation organized under the laws of California, owns and/or operates a trucking transport facility located at 1444 El Pinal Drive, Stockton, California 95205 (the "Facility"). The Facility was initially classified under Standard Industrial Classification ("SIC") codes 5093 ("Processing, reclaiming, and wholesale distribution of scrap and waste materials"), 4213 (over-the-road trucking), and 7549 (automotive services, including towing) for purposes of regulation under the General Permit; however, by March of 2018, Covey ceased to engage in activities under SIC codes 5093 and 7549, and SIC code 4213 is the remaining applicable SIC code. The Facility now consists of a fueling area (runoff from this area drains to the sanitary sewer system), indoor maintenance bays, indoor materials and waste storage associated with the indoor maintenance bays, and a parking area for trucks, among other operations.

**WHEREAS**, as noted above, Covey has ceased all automotive dismantling and towing operations at the Facility; all automotive maintenance occurs under full cover at the Facility; and the automotive fueling area at the Facility discharges storm water and non-storm water to the City of Stockton's Regional Wastewater Control Facility pursuant to authorization.

**WHEREAS**, CSPA and Covey shall be individually referred to as a "Party" and collectively referred to as the "Parties;"

**WHEREAS**, Covey continues to collect and discharge storm water from the parking area for trucks at the Facility pursuant to the General Permit through a single storm water discharge outfall located on the north-west side of the Facility. Storm water onsite follows flow patterns and enters a series of drain inlets which flow to the outfall, then passes through a sand/oil filter, and is sampled at the outfall prior to discharging into the City of Stockton's Municipal Separate Storm Sewer System ("MS4") and then to Yosemite Lake, which is connected to the San Joaquin River. A revised site map of

the Facility is provided as **Exhibit A** and incorporated herein by reference.

**WHEREAS**, these storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, State Water Resources Control Board ("State Board") Water Quality Order No. 2014-0057-DWQ (hereinafter "General Permit" or "2015 Permit"); and, prior to July 1, 2015, were regulated by Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ) ("1997 Permit"), each of which was issued pursuant to Section 402(p) of the Clean Water Act (the "Act" at 33 U.S.C. §§ 1251, *et seq*.), 33 U.S.C. § 1342(p);

**WHEREAS,** the General Permit includes requirements for two (2) types of permit coverage, General Permit or Notice of Intent ("NOI") coverage and Certification of No Exposure ("NEC") coverage.

**WHEREAS,** Covey has notified CSPA of its contention that remaining storm water that falls on the Facility is not exposed to industrial activity, and that Covey has applied for NEC coverage under the General Permit and has been issued an NEC Waste Discharger Identification Number of 5S39NEC004072 by the State Board.

**WHEREAS,** NEC coverage is available on a facility-wide basis only, not for individual outfalls. If a facility has industrial storm water discharges from one or more drainage areas that require NOI coverage, Dischargers shall register for NOI coverage for the entire facility.

**WHEREAS,** storm water dischargers that are denied approval of a submitted registration for NEC coverage by the State Board or the Central Valley Regional Water Quality Control Board ("Regional Board"), shall continue compliance with this General Permit under NOI coverage.

**WHEREAS**, under the Facility's NOI coverage, Covey entered Exceedance Response Level 2, and submitted a Level 2 Exceedance Response Action Plan, for Total Suspended Solids ("TSS"), Total Aluminum, and Total Iron, as a result of annual Numeric Action Level ("NAL") exceedances during the 2015-2016 and 2016-2017 storm water seasons.

**WHEREAS**, in response to the Level 2 Exceedance Response Action Plan, Covey engaged in source control, moved certain activities indoors, and eliminated some of the activities that contributed to the exceedances, leading to the NEC coverage.

**WHEREAS**, on or about January 11, 2018, CSPA provided notice of Covey's alleged violations of the Act ("Notice Letter"), and of its intention to file suit against CSPA to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive Director of the State Board; the Executive Officer of the Regional Water Quality Control Board, Central Valley Region ("Regional Board"); and to Covey, as required by the Act, 33 U.S.C. section 1365(b)(1)(A) (a true and correct copy of CSPA's Notice Letter is attached as **Exhibit B** and incorporated herein by reference);

**WHEREAS**, on or about March 13, 2018, CSPA filed a Complaint for Declaratory and Injunctive Relief and Civil Penalties ("Complaint") in the U.S. District Court, Eastern District of California ("Eastern District Court");

**WHEREAS**, Covey denies the occurrence of the violations alleged in the Notice Letter and the Complaint, and maintains that there are no "ongoing and continuous" violations of the General Permit or the Act. Covey maintains that it has ceased all activities related to automobile dismantling and towing, moved other activities indoors, and now operates pursuant to NEC coverage;

**WHEREAS**, the Parties agree that it is in their mutual interest to resolve the Clean Water Act matter as to all entities and persons named in the Notice Letter and Complaint without litigation and enter into this Consent Decree; and

**WHEREAS**, for purposes of this Consent Decree only, the Parties stipulate that venue is proper in the Eastern District Court and that Covey does not contest the exercise of jurisdiction by the Eastern District Court in the future pursuant to Paragraph 4 of this Consent Decree;

**NOW THEREFORE IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES AS FOLLOWS:**

## I. EFFECTIVE DATE AND TERM OF CONSENT DECREE

1. **Effective Date.** The "Effective Date" shall mean the date the Consent Decree is entered by the Eastern District Court as described in Paragraph 3 of this Consent Decree.

2. **Term.** The Term of this Consent Decree shall run from the Effective Date until July 31, 2020 ("Termination Date").

## II. COMMITMENTS OF CSPA

**3. Submission of Consent Decree and Statutory Agency Review.**

Within five (5) business days of the mutual execution of this Consent Decree, CSPA shall do all of the following:

**a.** Submit this Consent Decree to the United States Department of Justice ("DOJ") and the United States Environmental Protection Agency ("USEPA") for the statutory forty-five (45) day agency review period set forth in 33 U.S.C. §1365(c) and 40 C.F.R. § 135.5. The agency review period expires 45 calendar days after receipt, as evidenced by written acknowledgement of receipt or the certified return receipts, copies of which are to be provided to Covey. In the event that the DOJ/EPA objects to the terms of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the DOJ/EPA within thirty (30) days.

**b.** Submit a Notice of Lodging of Consent Decree with the Eastern District Court. Pursuant to 40 C.F.R. § 135.5(b), after the statutory 45-day review period, this Consent Decree may be entered by the Court. If the DOJ/EPA submit correspondence that they do not object to the Court's entering of the Consent Decree prior to the 45-day review period expiring, the Court can proceed with entering the Consent Decree without having to wait for the 45-day period to run. Following the conclusion of the 45-day notice period or the submission of correspondence indicating that the DOJ/EPA do not object to the Court entering the Consent Decree, and assuming resolution of any comments critical of the terms of this Consent Decree, CSPA and Covey shall move the Court to enter this Consent Decree. If this Consent Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before the lodging of the Consent Decree.

**c.** The Parties agree to cooperate in good faith to obtain prompt review of this Consent Decree by the DOJ/EPA and the Court. If the DOJ/EPA or the Court comment on this Consent Decree, and as a consequence the Consent Decree is not entered, the Parties agree to discuss such comments and attempt to make such revisions as necessary to obtain entry of this Consent Decree.

**4. Effect of Consent Decree.** It is the express purpose of the Parties entering into this Consent Decree to resolve those issues alleged by Plaintiff in its Complaint. Nothing in this Consent Decree shall be construed as a waiver of any Party's right to appeal from an order that arises from a

motion to enforce the terms of this Consent Decree.

**III.  COMMITMENTS OF COVEY**

  **5.**  **Compliance with General Permit and Clean Water Act**. Throughout the Term of this Consent Decree, Covey shall continue implementing all measures needed to operate the Facility in compliance with the requirements of the operative General Permit and the Act, subject to any defenses available under the law.

  **6.**  **NEC Coverage**. During the term of this Consent Decree, Covey shall meet the requirements of the No Exposure Certification ("NEC") Conditional Exclusion set forth in Section XVII of the General Permit, demonstrating that its Facility has no storm water exposure to industrial activities and materials, in which case, Covey is exempt from sampling requirements under the General Permit. Annual inspections, re-certifications, and fees are required in subsequent years.

  A. <u>Covey shall meet all conditions under the General Permit for NEC coverage, including:</u>

    i. No exposure[1] of Industrial Materials and Activities[2] to rain, snow, snowmelt, and/or runoff;

    ii. Vehicles, such as trucks, automobiles, forklifts, trailers or other general-purpose vehicles found onsite must be adequately maintained, kept in good repair, and not otherwise be potential sources of contaminant.

    iii. All unauthorized NSWDs have been eliminated and all authorized NSWDs meet the conditions of Section IV of the General Permit;

    iv. Certification and submission via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") Permit Registration Documents ("PRDs") for NEC coverage pursuant to the instructions in Section II.B.2 of the General Permit;

    v. Comply with the certification requirements of Section XXI.K of the General Permit when submitting PRDs;

    vi. Comply with the annual inspection and submittal schedule in accordance with

---

[1] "No Exposure" means all Industrial Materials and Activities are protected by a Storm-Resistant Shelter to prevent all exposure to rain, snow, snowmelt, and/or runoff.
[2] "Industrial Materials and Activities" includes, but is not limited to, industrial material handling activities or equipment, machinery, raw materials, intermediate products, by-products, final products, and waste products.

Section II.B.2 of the General Permit; and

  vii. Satisfy all other requirements of Section XVII of the General Permit.

 B. <u>To maintain NEC coverage, Covey must take all of the following actions</u>:

  i. Except as provided in Section XVII, subsection D of the General Permit, continue providing a Storm-Resistant Shelter[3] to protect Industrial Materials and Activities from exposure to rain, snow, snowmelt, run-on, and runoff;[4] and

  ii. Inspect and evaluate the Facility annually to determine that storm water exposed to industrial materials or equipment has not and will not be discharged to waters of the United States. Evaluation records shall be maintained for five (5) years in accordance with Section XXI.J.4 of the General Permit.

 C. <u>Required Permit Registration Documents</u>. Covey submitted the following documents via SMARTs for NEC coverage on March 28, 2018:

  i. The NEC form, which includes:

   a. The Discharger's legal name, postal address, telephone number, and e-mail address;

   b. The Facility business name, physical mailing address, and the county name; and,

   c. Certification by Covey that all PRDs submitted are correct and true and the conditions of no exposure have been met.

  ii. An NEC Checklist prepared by Covey demonstrating that the Facility has been evaluated; and that none of the following industrial materials or activities are, or will be in the foreseeable future, exposed to precipitation:

---

[3] "Storm-Resistant Shelters" includes completely roofed and walled buildings or structures. Also includes structures with only a top cover supported by permanent supports but with no side coverings, provided material within the structure is not subject to wind dispersion (sawdust, powders, etc.), or track-out, and there is no storm water discharged from within the structure that comes into contact with any materials.

[4] According to Section XVII, subsection D of the General Permit Storm-Resistant Shelters are no required for: (1) Drums, barrels, tanks, and similar containers that are tightly Sealed, provided those containers are not deteriorated, do not contain residual industrial materials on the outside surfaces, and do not leak; (2) Adequately maintained vehicles used in material handling; (3) Final products, other than products that would be mobilized in storm water discharge (e.g., rock salt); (4) Any Industrial Materials and Activities that are protected by a temporary shelter for a period of no more than ninety (90) days due to facility construction or remodeling; and, (5) Any Industrial Materials and Activities that are protected within a secondary containment structure that will not discharge storm water to waters of the United States.

a. Using, storing or cleaning industrial machinery or equipment, and areas where residuals from using, storing or cleaning industrial machinery or equipment remain and are exposed;

b. Materials or residuals on the ground or in storm water inlets from spills/leaks;

c. Materials or products from past industrial activity;

d. Material handling equipment (except adequately maintained vehicles);

e. Materials or products during loading/unloading or transporting activities;

f. Materials or products stored outdoors (except final products intended for outside use, e.g., new cars, where exposure to storm water does not result in the discharge of pollutants);

g. Materials contained in open, deteriorated, or leaking storage drums, barrels, tanks, and similar containers;

h. Materials or products handled/stored on roads or railways owned or maintained by Covey;

i. Waste material (except waste in covered, non-leaking containers, e.g., dumpsters);

j. Application or disposal of processed wastewater (unless already covered by an NPDES permit); and,

k. Particulate matter or visible deposits of residuals from roof stacks/vents evident in the storm water outflow.

    iii. A Site Map (see Section X.E of the General Permit), which was submitted to SMARTS on May 10, 2018.

D. <u>Recertification</u>. By October 1 of each reporting[5] year under the Term of this Consent Decree, Covey shall either (1) submit and certify an NEC demonstrating that the Facility has been evaluated, and that none of the Industrial Materials or Activities listed above are, or will be in the

---

[5] A reporting year is July 1 to June 30.

foreseeable future, exposed to precipitation; or (2) reapply for NOI coverage.

E. <u>Certification Statement.</u> All NEC certifications and re-certifications shall include the following certification statement:

> *I certify under penalty of law that I have read and understand the eligibility requirements for claiming a condition of 'no exposure' and obtaining an exclusion from NPDES storm water permitting; and that there are no discharges of storm water contaminated by exposure to industrial activities or materials from the industrial facility identified in this document. I understand that I am obligated to submit a no exposure certification form annually to the State Water Board and, if requested, to the operator of the local Municipal Separate Storm Sewer System (MS4) into which this facility discharges (where applicable). I understand that I must allow the Water Board staff, or MS4 operator where the discharge is into the local MS4, to perform inspections to confirm the condition of no exposure and to make such inspection reports publicly available upon request. I understand that I must obtain coverage under an NPDES permit prior to any point source discharge of storm water from the facility. I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based upon my inquiry of the person or persons who manage the system, or those persons directly involved in gathering the information, the information submitted is to the best of my knowledge and belief true, accurate and complete. I am aware there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.*

F. <u>Changes</u>. If circumstances change and Industrial Materials and Activities become exposed to rain, snow, snowmelt, and/or runoff, the conditions for this exclusion shall no longer apply. If Covey anticipates changes in circumstances, it should register for NOI coverage at least seven (7) days before anticipated exposure.

**7. Sampling and Parameters.** To confirm that former industrial materials have been removed from the Facility, Covey shall collect and analyze samples from two (2) Qualifying Storm Events ("QSE")[6] in the 2018-2019 reporting year from the Facility's discharge point for Aluminum, TSS, and Iron. For each sample obtained, Covey shall adhere to all necessary preservation methods and holding time limits for the subject constituents. The samples shall be analyzed by a laboratory accredited by the State of California. Analytical methods used by the laboratory shall comply with General Permit requirements in regards to both test method and detection limit. *See* General Permit, Table 2, at 43. All

---

[6] The samples shall be taken in accordance with Section XI.B of the General Permit with one (1) QSE sample taken within the first half of each reporting year (July 1 to December 31) and one (1) QSE sample taken within the second half of the reporting year (January 1 to June 30). If more than one sample is taken in each half of the reporting year, all samples shall be used for NAL averaging.

Covey storm water sampling results shall be provided to CSPA within seven (7) business days of Covey's receipt of the laboratory report from each sampling event, pursuant to the Notice provisions below. If either of the samples taken in the 2018-2019 reporting exceed an applicable NAL Benchmark for Aluminum, TSS, or Iron, or if Covey fails to collect and analyze samples from requisite QSEs (provided the requisite QSEs occur at the Facility), then Covey shall sample a single QSE[7] in the 2019-2020 reporting year for Aluminum, TSS, and Iron.

**8. "Action Memorandum" Trigger; CSPA Review Of "Action Memorandum"; Meet-and-Confer**. If the average of the samples taken, referenced in Paragraph 7 above for the 2018-2019 reporting year, exceeds an applicable NAL Benchmark for Aluminum, TSS, or Iron, or if Covey fails to collect and analyze samples from the requisite QSEs (provided the requisite QSEs occur at the Facility in the 2018-2019 reporting year), then Covey shall prepare a written statement discussing the exceedance(s) and/or inability or failure to collect and analyze samples from the requisite QSEs, the possible cause and/or source of the exceedance(s), and additional measures that will be taken to address and eliminate future exceedances and/or failures to collect required samples ("Action Memorandum"). The Action Memorandum shall be provided to CSPA no later than thirty (30) days following Covey's receipt of the sample requiring the Action Memorandum. Such additional measures, to the extent feasible, shall be implemented immediately, and in no event later than sixty (60) calendar days after the due date of the Action Memorandum. Within ten (10) calendar days of implementation, the Facility SWPPP shall be amended to include all additional BMP measures designated in the Action Memorandum. CSPA may review and comment on an Action Memorandum within thirty (30) days of receipt, and suggest any additional pollution prevention measures it believes are appropriate; however, CSPA's failure to do so shall not be deemed to constitute agreement with the proposals set forth in the Action Memorandum. Upon request by either Party, CSPA and Covey agree to meet and confer regarding the contents and sufficiency of the Action Memorandum. For purposes of this Action Memorandum, CSPA and Covey agree that one appropriate additional measure is a requirement to perform regenerative street sweeping of the paved surfaces bi-monthly (every two months) during the

---

[7] Should a QSE sample, as defined by the General Permit, be required in the 2019-2020 reporting year, the applicable sample shall be the first sample taken in the 2019-2020 reporting year.

wet season. If a sample is required in the 2019-2020 reporting year pursuant to Paragraph 7 above, and the sample exceeds an applicable NAL Benchmark for Aluminum, TSS, or Iron, without annual averaging, or if Covey fails to collect and analyze the required sample from a QSE (provided the requisite QSE occurs at the Facility in the 2019-2020 reporting year), then Covey agrees to continue bi-monthly regenerative street sweeping of the paved surfaces during the 2019-2020 wet season.

**9. Inspections During the Term of this Consent Decree**. Covey shall permit representatives of CSPA to perform one (1) physical inspection of the Facility during the Term of this Consent Decree. This inspection shall be performed by CSPA's counsel and consultants and may include sampling, photographing, and/or videotaping (CSPA agrees photographing and videotaping will be keep confidential, except as necessary for enforcement or dispute resolution under this Consent Decree) and CSPA shall provide Covey with a copy of all sampling reports, photographs, and/or video. CSPA shall provide at least two-weeks advance notice of such physical inspection, except that Covey shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals. In such case, Covey shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by CSPA may proceed. Covey shall not make any alterations to Facility conditions during the period between receiving CSPA's initial two-week advance notice and the start of CSPA's inspection that Covey would not otherwise have made but for receiving notice of CSPA's request to conduct a physical inspection of the Facility, excepting any actions taken in compliance with any applicable laws or regulations.

**10. Covey Communications To/From Regional and State Water Boards.** During the Term of this Consent Decree, Covey shall provide CSPA with copies of all documents submitted to, or received from, the Regional Water Board or the State Water Board concerning storm water discharges from the Facility, including, but not limited to, all documents and reports submitted to the Regional Board and/or State Water Board as required by the current General Permit. Such documents and reports shall be provided to CSPA pursuant to the Notice provisions set forth below and contemporaneously with Covey's submission(s) to, or, receipt from, such agencies.

**11. SWPPP Amendments**. Pursuant to the Notice provisions set forth below, Should Covey

11
CONSENT DECREE

wet season. If a sample is required in the 2019-2020 reporting year pursuant to Paragraph 7 above, and the sample exceeds an applicable NAL Benchmark for Aluminum, TSS, or Iron, without annual averaging, or if Covey fails to collect and analyze the required sample from a QSE (provided the requisite QSE occurs at the Facility in the 2019-2020 reporting year), then Covey agrees to continue bi-monthly regenerative street sweeping of the paved surfaces during the 2019-2020 wet season.

**9. Inspections During the Term of this Consent Decree**. Covey shall permit representatives of CSPA to perform one (1) physical inspection of the Facility during the Term of this Consent Decree. This inspection shall be performed by CSPA's counsel and consultants and may include sampling, photographing, and/or videotaping (CSPA agrees photographing and videotaping will be keep confidential, except as necessary for enforcement or dispute resolution under this Consent Decree) and CSPA shall provide Covey with a copy of all sampling reports, photographs, and/or video. CSPA shall provide at least two-weeks advance notice of such physical inspection, except that Covey shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals. In such case, Covey shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by CSPA may proceed. Covey shall not make any alterations to Facility conditions during the period between receiving CSPA's initial two-week advance notice and the start of CSPA's inspection that Covey would not otherwise have made but for receiving notice of CSPA's request to conduct a physical inspection of the Facility, excepting any actions taken in compliance with any applicable laws or regulations.

**10. Covey Communications To/From Regional and State Water Boards.** During the Term of this Consent Decree, Covey shall provide CSPA with copies of all documents submitted to, or received from, the Regional Water Board or the State Water Board concerning storm water discharges from the Facility, including, but not limited to, all documents and reports submitted to the Regional Board and/or State Water Board as required by the current General Permit. Such documents and reports shall be provided to CSPA pursuant to the Notice provisions set forth below and contemporaneously with Covey's submission(s) to, or, receipt from, such agencies.

**11. SWPPP Amendments**. Pursuant to the Notice provisions set forth below, Should Covey

be unable to obtain NEC coverage and maintains NOI coverage under the General Permit, Covey shall provide CSPA with a copy of any amendments to the Facility SWPPP made during the Term of the Consent Decree within fourteen (14) calendar days of such amendment.

## IV. MITIGATION, COMPLIANCE MONITORING AND FEES AND COSTS

**12. Mitigation Payment.** As mitigation of the Clean Water Act violations alleged in CSPA's Complaint, Covey agrees to pay the sum of $7,500.00 to the Rose Foundation for Communities and the Environment for projects to benefit the San Joaquin River or tributaries to the San Joaquin within San Joaquin County and mailed via certified mail or overnight delivery to the attention of Tim Little, Executive Director, Rose Foundation, at 201 4th Street, Suite 102 Oakland, CA 94607. The Mitigation Payment shall be made within thirty (30) days of the Effective Date, and Covey shall concurrently provide CSPA with a copy of such payment. No funds from such payment shall be used by CSPA.

**13. Reimbursement of Fees & Costs**. Covey agrees to reimburse CSPA in the amount of $22,500.00 to defray CSPA's reasonable investigative, expert, consultant, and attorneys' fees and costs, and all other costs incurred as a result of investigating the activities at the Facility, preparing the Notice, and negotiating a resolution of this action in the public interest. Such payment shall be made payable to the "ATA LAW GROUP" and remitted to the firm within seven (7) calendar days after the Court Approval Date, delivered to: ATA Law Group, 490 43rd Street Suite 108, Oakland, CA 94609. Court Approval Date shall mean the date the Court enters the Dismissal with Prejudice of this matter, retaining jurisdiction for the Term of this Consent Decree.

**14. Compliance Monitoring.** Covey shall pay $2,500.00 to fund CSPA's costs of monitoring, overseeing and enforcing Covey's commitments to CSPA under this Consent Decree (excepting any future judicial enforcement as prescribed in Paragraph 15), including participating in any potential changes to compliance requirements herein. Covey's check shall be provided by November 1, 2018, and made payable to: "ATA LAW GROUP," delivered to: ATA Law Group, 490 43rd Street Suite 108, Oakland, CA 94609.

## V. DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE

**15.** With the exception of the specific timelines set forth above for addressing communication regarding the Action Memoranda specified in Paragraph 8 above, if a dispute under this Consent Decree arises, or either Party believes that noncompliance with this Consent Decree has occurred, the Parties shall meet and confer within seven (7) calendar days of receiving written notification from the other Party of a request for a meeting to determine whether a breach has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the Parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) calendar days have passed after the meet-and-confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including filing a motion with the Eastern District Court. The Parties shall be entitled to seek fees and costs incurred in any such motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in the then-applicable federal Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure, and applicable case law interpreting such provisions.

**16.** **CSPA's Waiver and Release**. Upon the Effective Date of this Consent Decree, CSPA, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Covey and its officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of its predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives, including those named in the Notice Letter, (each a "Released Party") from, and waives all claims which arise from or pertain to the Notice Letter and Complaint, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed, for the alleged failure of Covey to comply with federal and state law, including the federal Clean Water Act (33 U.S.C. sections 1251, et seq.), at the Facility, up to the Termination Date with the exception of matters addressed in Paragraph 15.

**17.** **Covey's Waiver and Release**. Covey, on its own behalf and on behalf of any Released Party under its control, releases CSPA (and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of its successors and assigns, and its agents, attorneys, and other

representative) from, and waives all claims which arise from or pertain to the Notice Letter and Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to the Notice Letter and Complaint, with the exception of matters addressed in Paragraph 15.

**18.    CSPA's Covenant Not to Sue**. Except for the enforcement of this Consent Decree, beginning on the Effective Date and terminating on the Termination Date, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will serve any 60-day Notice Letter or file any lawsuit against Covey seeking relief for all claims which arise from or pertain to the Notice Letter and Complaint, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum, incurred or claimed or which could have been claimed, regarding the alleged failure of Covey to comply with the federal Clean Water Act (33 U.S.C. sections 1251, et seq.), at the Facility. Any such 60-day Notice Letter or lawsuit filed by CSPA after the Termination Date shall not include any such claims for such actions up to and including the Termination Date.

**19.**    The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

While a Party asserts that California Civil Code section 1542 applies to general releases only, and that the release in Paragraphs 17-18 above are limited releases, the Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the Notice Letter and/or Complaint, up to and including the Effective Date of this Consent Decree.

**VI.  MISCELLANEOUS PROVISIONS**

**20.** The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Decree shall be construed as, and Covey expressly does not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Covey of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

**21.** If Covey should cease industrial operations at the Facility, or sell the facility, and file a Notice of Termination ("NOT") under the General Permit prior to the Termination Date of this Consent Decree, Covey shall send CSPA a copy of the proposed NOT concurrent with its submittal to the Regional Water Board. Within ten (10) days of the Regional Board's approval of the NOT, Covey shall notify CSPA in writing of the approval and remit all outstanding payments to CSPA. If cessation or sale occurs prior to any deadlines set forth herein, Covey will be relieved of its obligations set forth herein (except for Paragraphs 12 and 13, which remain applicable).

**22.** The terms of this Consent Decree shall be binding on all parties and their employees, officers, agents, divisions, subsidiaries, parent corporations, or affiliates.

**23.** The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document. An executed copy of this Consent Decree shall be valid as an original.

**24.** In the event that any one of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**25.** The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial Storm Water Permit, the Clean Water Act, or specifically herein. The captions and Paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree. The undersigned are authorized to execute this Consent Decree on behalf of their respective Parties and have read, understood, and agreed to be bound by all of the terms and conditions of this Consent Decree.

**26.** All agreements, covenants, representations, and warranties, express or implied, oral or

written, of the Parties concerning the subject matter of this Consent Decree are contained herein. This Consent Decree and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Consent Decree, unless otherwise expressly provided for therein.

**27. Notices**. Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to CSPA pursuant to this Consent Decree shall be hand-delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

>Bill Jennings
>3536 Rainer Avenue
>Stockton, California 95204
>Tel. (209) 464-5067
>deltakeep@me.com

With copies sent to:

>Anthony Barnes
>Aqua Terra Aeris Law Group
>490 43rd Street, Suite 108
>Oakland, CA 94609
>amb@atalawgroup.com

Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Covey pursuant to this Consent Decree shall be sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

>Mike Covey Jr.
>Vice President, Covey Auto Express, Inc.
>1444 El Pinal Drive
>Stockton, CA 95202
>MikeJr@coveyauto.com

With copies sent to:

>Nicole E. Granquist
>Downey Brand LLP
>621 Capitol Mall, 18th Floor
>Sacramento, CA 95814
>ngranquist@downeybrand.com

1     Each Party shall promptly notify the other of any change in the above-listed contact information.

2     **28.**     Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

**29.**     No Party shall be considered to be in noncompliance with any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any circumstances beyond the Party's control, including, without limitation, any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100-year/24-hour storm event, or inability to pay. Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid and which by exercise of due diligence has been unable to overcome, the Force Majeure.

**30.**     The Parties have negotiated this Consent Decree, and agree that it shall not be construed for or against any Party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

The Parties hereto enter into this Consent Decree on the terms set forth herein.

Dated: August 28, 2018                                  By: _____
                                                                                        William Jennings
                                                                                        California Sportfishing Protection Alliance

Dated: _____, 2018                                  By: _____
                                                                                       Kathy Covey or Mike Covey, Jr.
                                                                                        Covey Auto Express, Inc.

APPROVED AS TO FORM

                                                                        AQUA TERRA AERIS LAW GROUP

Dated: August 28, 2018                                By: _____
                                                                              Anthony M. Barnes
                                                                              Attorneys for Plaintiff

DOWNEY BRAND LLP

Dated: _____, 2018    By: _____
                                        Nicole E. Granquist
                                        Attorneys for Defendant

**FINAL JUDGMENT**

The court has reviewed the foregoing proposed Consent Decree and the letter filed by the United States on September 13, 2018. *See* ECF No. 21. Any proposed modification of the Consent Decree shall be provided to the United States as outlined in the letter. *Id.* at 1.

**IT IS SO ORDERED.**

DATED: September 20, 2018.

_____
UNITED STATES DISTRICT JUDGE